Good morning. May it please the court. My name is George Ferides, representing Mr. Harjinder Singh, the petitioner in this Ninth Circuit appeal from the Board of Immigration Appeals' decision. Because the Board of Immigration Appeals streamlines this case, the immigration judge's decision is the decision which shall be reviewed for substantial evidence. The threshold and, indeed, the sole issue in this case is credibility. Is it correct he did not exhaust the Convention Against Torture Claims, so we don't have any jurisdiction to do anything with that? Well, Your Honor, I don't believe there was a – at the time that, I guess, the decision was rendered, there would have had to be a motion to reopen to pursue CAD. I don't know if that was done in this case, but it's my understanding that at the Board level it was not requested. So as far as the immigration judge's credibility finding in this case, it was based solely in the opinion of the petitioner on one, inconsistency, and then an assortment of what the immigration judge referred to as implausible testimony. Counsel, there were two things that really struck me looking over this fellow's testimony. One was he says he's scared to go back to the village, and he goes back. And the other was he says he dislocated his knee, but he couldn't remember that. That hurts a lot. I'm surprised he couldn't remember it. Why couldn't – Okay, Your Honor, I'll take the first one, then I'll proceed to the second. The first, I believe you mentioned, was why he would return to his home village. It's clear from the record that he fled India for the first time in 1995 and that he did not want to return. He was forced to return by, I believe, the Indonesian government. He states on page 141 of the record that he did not want to return to India, that he was afraid of returning to India. And then on page 143, he testified consistently with his asylum application on page 688 of the record that he was forced to give both his money and his address to the immigration authorities once he returned, that he did not feel safe in Delhi because he gave his uncle's address to the immigration authorities, and that he therefore, because of encouragement from his uncle, which he testifies to on page 143, he decided that he would leave his situation to fate and return to his home village. I don't think that there's any inconsistency in the record. He didn't want to return to India in the first place. Whether it was in Delhi that he was forced to stay or in his home village, it would have been equally perilous to him because he gave his address to the immigration authorities. Once he returned, they told him that they would be looking for him, which is established in the record. And so he figured, well, I might as well just go back to my village. And so that's how I would address that first issue. The second issue is with regards to his not being aware that he may have had a dislocated knee, as the doctor's report states in the record. First of all, the immigration judge did not rely upon that as part of the adverse credibility finding. He only mentioned that in discounting the amount of weight he would give to the evidence in the record, including the doctor's report. He said, well, I can't place too much weight on the report you submitted because you can't even really corroborate with your testimony that this, in fact, is an injury you suffered. I would argue, one, that it was unfair to diminish the amount of weight he gave to the doctor's report based on petitioners' knowledge of what kind of an injury he precisely suffered, what precise injury he suffered. He's not a medical expert. He knew he had a problem with his knee. I think that it's fair in this case to assume, based on his testimony, to infer that he shouldn't have to know exactly what type of injury he suffered, and that's how I would address that inconsistency if there is one. Counsel, our credibility cases, as you are aware, go all over the lot. Yes, Your Honor. What are you relying on, GE and Shire, those cases? I'm relying primarily on the court's cases, Bhandari, if I'm pronouncing that correctly, as well as Lopez-Reyes, the progeny of cases which say that speculation about what a government, what a persecutor might do is clearly improper. It's impermissible speculation. Here the immigration judge is saying, well, you know, I don't think that the government should have released you, the Indian police should have released you on your last arrest without payment of a bribe because they had accused you upon some false pretext or false pretense that you were a militant. And so, you know, he discounts basically his testimony. We have some cases that hold, don't they, that the IJ can make a credibility determination based on implausibility. If it sounds too good to be true, it can't be true, that kind of thing. Well, Your Honor, if it's based – If I go back to my home country, aliens will get off the spaceships and start beating me up? Well, I suppose so, Your Honor, but I don't think that in this case it goes to that extent. I don't think that his testimony that he was released without payment of a bribe, for instance, on his last arrest is unreasonable because if this court were to hold that, well, because you were released from your first few arrests with payment of a bribe, including the time you were detained upon your return to India, you gave them all the money you had, then if this court is to hold that, therefore, it only makes sense and we can discredit your testimony. That's not the approach. It's not can you think of an excuse for him and it's the only thing that makes sense that he's a liar. It's the opposite. Is there substantial evidence on the record as a whole that supports the IJ's or BIA's determination or is the evidence compelling that they're wrong? I think it's compelling that the immigration judge here is wrong because the only support for the immigration judge's opinion in this matter is his own opinion. It's not grounded in the – Well, incidentally, I found it implausible right from the get-go that this guy was a militant Sikh at all because he doesn't follow the 5Ks. Now, he certainly could be a militant Sikh and not follow the 5Ks, I suppose. Well, he never said he was – Friends in the militant Sikh movement would be unhappy about that. Did the IJ bring up anything about that? No, Your Honor. He accepted both the petitioner's testimony as well as his documentation which state that he is a Sikh. He did not question his devotion to Sikh religion, did not question his identity or background as an East Indian. Here, the immigration judge, I believe, if he's going to say that something is implausible, he needs to cite it somewhere in the record. He needs to say, well, at least, at the very least, say – the Department of State reports say that you wouldn't be released in such a way without payment of a bribe. Petitioner explained, moreover, on the record that the head officer of the police station at which he was detained on the occasion of his last arrest was different from all the other officers and so may not have had the knowledge of his previous arrests or his previous record. And for whatever reason, whether it was intervention of the village leaders in a petitioner's village or from any other avenue, he was just released on his own recognizance. I don't see how that's implausible in this case. The only direct inconsistency, in fact, that the immigration judge cited was the immigration judge's alleged inconsistency between his written application, actually his written declaration and his testimony about why he returned to India. But clearly, if we look at page 143 of the record and compare and contrast it with his written declaration on page 688, they are similar language and essentially the same. There is no inconsistency. Counsel, you're down about a minute and a half. You may want to reserve or... Thank you, Your Honor. I will reserve. Thank you. We'll hear from the government. Thank you, Your Honor. May it please the Court. My name is Debbie Messier and I represent the Attorney General. Your Honors, this is an asylum case in which the I.J. denied relief on the basis of an adverse credibility determination. Since substantial evidence in the record supports the I.J.'s denial of relief and does not compel a contrary conclusion, we ask the Court to deny the petition for review. I'm not sure that that's quite true. I was looking for actual inconsistencies in the testimony and I really couldn't find any. What are you relying on? Yes, Your Honor. We're relying on, first, the implausibilities in the immigration judge's decision, and those go to the adverse credibility determination. Contrary to petitioner's claim, there was no improper speculation by the immigration judge, and he did, in fact, inventory in great depth in his decision the numerous implausibilities, and this Court has held in Sinkower that implausibility is a piece of the overall credibility determination, if you will. Now, what about the G case, G-E? G-E is, maybe I'm pronouncing it wrong, but it's Wenda Gee or G-E Tashcroft? Your Honor, I have to confess, I'm not personally familiar with that. I would be happy to brief that separately. We do believe, however, that Sinkó What about Shire? That Shire does notódoes add support to the proposition that implausibility goes to adverse credibility? Absolutely, Your Honor. We believe that that isó That Shire helps you? We think so, Your Honor. I mean, plausibility isóan applicant for asylum has to present believable and consistent testimony, and plausibility certainly goes to the believability aspect. But Shire went the other way. Shire held that there wasóthere wasn't enough to sustain substantial evidence. In that case, it did, Your Honor, but in this case, we think that the facts support our contention. All right. Well, then, what are you relying on primarily in terms of inconsistencies or lack of implausibilities? Yes, Your Honor. I'll first address the plausibility issue. First, I think the most striking fact in this case is when Mr. Sink was repatriated by the Indonesian authorities back to India in í95, I believe. He was detained for half an hour and questioned by Indian immigration authorities in Delhi. He wasn't harmed. He wasn'tóhe didn't suffer any of what he claims he fears he's going to suffer. He's returned back to India. He was merely questioned. He paid a fine, and he was sent on his way. And right after he was repatriated back to India, he went right back to his home village where he claims the locus of the persecution exists. He voluntarily went back home and felt safe enough to get married, in fact, soon after. The second, I think, most compelling fact in this case is his father, who was allegedly the basis of one of his arrestsómother, brother, sister, and wifeó are all living in his home village back in India and, according to his own evidence, doing fairly well. So those are twoó Is his wife still back there? I'm sorry, Your Honor? Is his wife still back there? His wife is still back there, according to the record, Your Honor, yes. And his siblings and his parents? His parents as well, yes. But how does that affect credibility? Because it goes to the plausibility of his belief that he would suffer persecution if returned back to India and has a well-founded fear of persecution in India. The fact that his whole family is doing fine there and that he himself felt safe enough to return right back to his village when he was repatriated by the Indonesians speaks volumes. Secondly, Your Honor, I'd like to bring your attention to the corroborating document issue. It wasn't discussed in detail by opposing counsel in his opening presentation, but I'd like to bring your attention to that. Petitioner had initially put two medical letters into the record, and he then withdrew one of the letters. And he withdrew one because the date of hospitalization noted conflicted with his testimony. Now, the immigration judge did not give a lot of weight to the second letter because it was prepared six and a half years after the alleged date of treatment. The letter did not specify why these documents were prepared. It was not clear that they were prepared in the course of medical treatment. The letters were very generalized, and as Your Honor noted, one of them said he had a dislocated knee, and he in fact denied that he had a dislocated knee during his own testimony. And finally, the letters appeared to come from a hospital that was some distance from his home village, and it was not clear why he would have been treated there. And also that contradicted his own testimony that the doctor had in fact come to his home and treated him. So given the fact that his testimony was replete with implausibility, contained some inconsistencies, and he could not present corroborative documentation to overcome the adverse credibility determination, it was quite proper for the immigration judge to make an adverse credibility determination. Finally, Your Honors, I just want to speak briefly to the exhaustion issue on the Convention Against Torture. It was not raised to the board. Under the clear precedent of this Court, he's failed to exhaust his administrative remedies. He cannot now seek review of those claims before this Court. And secondly, on the remand issue, we touched briefly upon it in our brief. The immigration judge merely made an adverse credibility determination. He didn't address, he didn't go directly to the merits of his claim. He didn't talk about safe internal relocation, which would clearly be an issue in this case. Mr. Singh moved to New Delhi for two years and apparently suffered no harm in New Delhi. And obviously, there have been changed country conditions in India. The prime minister of India is himself a Sikh. So the merits were not reached in this case. The prime minister of India is a Sikh? That's correct, Your Honor. And we would ask the Court to take judicial notice of that fact. It's not in the record because the record was prepared prior to that. But I believe his name is Mahamuddin Singh. Excuse me if I'm pronouncing it incorrectly. But he is the prime minister, he's the elected prime minister of India. And there have clearly been changes. We can certainly take notice of changed country condition in a State Department report. But I'm not sure we can go beyond that, can we? Yes, Your Honor. Assuming it's in the record. Assuming it's in the record. But again, of course, Your Honor, given the length of time that these cases, the way they wind themselves through the system, the record was compiled before that fact occurred. I think it's clear under Castillo-Viagra, we can take notice that the prime minister is a Sikh. But the asylum seeker is entitled to a hearing on whether and how that may affect him. So there would be a remand if it matters. If despite the, we believe, well-supported and well-articulated immigration judge's decision, if this Court did determine that, a remand would be proper in that case. Yes, Your Honor. In conclusion, Your Honors, on the basis of the specific cogent reasons offered by the immigration judge in making his adverse credibility determination that go to the very heart of Petitioner's claim, i.e., that he's afraid to go back to his village because the police believe he's a suspected Sikh militant, and because the record does not, yes, Your Honor? His wife is there. That's correct, Your Honor. His family is there. Yes. That sounds implausible to me. We would agree with that, Your Honor, yes. Therefore? Therefore, we would ask the Court to deny the petition for review because the record does not compel a contrary conclusion to that reached by the immigration judge. If there are no further questions, Your Honors. No further questions. Thank you. Thank you very much. Mr. Herides, you have some reserved time. Where does this leave us now? Well, Your Honor, it seems to me that the Respondents' Counsel would like to reinvent the immigration judge's decision. The immigration judge did not base a denial on any alleged consistency between the documentation he presented and his testimony. Therefore, this Court cannot rely on those issues, as the Respondent would like to raise them, upon which to deny this case. Number two, we're talking about implausible testimony, right? I thought the I.J. did mention possible. I don't know if he used the phrase document fraud, but I thought that was one of the things. No, Your Honor. In the beginning of his decision, he explains why he's not going to give the documentation petitioner submitted the full weight, okay? And so he doesn't use it for purposes. I mean, his adverse credibility finding in petitioner's opinion starts on page 59 of the record. The immigration judge admits that he has a long, rambling decision. And, in fact, petitioner would argue that his statement of facts and his analysis of law are very much jumbled. Moreover ---- I just hate parsing these the way you would a Supreme Court decision because they're oral. It's like a rougher thing. Yes, but there can be headings. There can be statement of facts and an analysis of law, credibility finding. There can be headings. It can be separated so that we know exactly what the inconsistencies are. But why can't the I.J. look at the situation and see the rest of the family, including this man's wife, are all in the same village, and say it's not likely you're going to get ---- No, he can, Your Honor, but that's not what he did here. He did not deny this case pursuant to a finding that the petitioner did not have a well-founded fear of future persecution. In fact, I think you can read his decision as jumbling those two issues, credibility and well-founded fear. Well-founded fear is subjective and objective components. Petitioner believes he's afraid. And so the immigration judge cannot say, well, I don't think it's plausible that you should be afraid and, therefore, you're not credible. He can't say that. He can only say, look, you may be afraid, but based on what you tell me, you shouldn't be. Therefore, I'm going to ---- That's the logic. I thought it was more if you were really afraid, then your parents, brothers and sisters and wife would not be living peacefully in the village. They'd be on the run, too. So you must be lying about being afraid. No, but that's what subjective fear is. He's saying, look, I was arrested and beaten. My father was arrested once because they were after me. I think that if I return, this is what would happen to me. This is not what really happened to the rest of my family. Yes, they're harassed by the police and the police inquire into my whereabouts. But this is about me, my situation. And then further ---- You say that one of his arrests was because the police were looking for his father and they didn't find him, so they picked him. Yeah. So how does that ---- We're talking about pretextual arrests here. I mean, we're trying to define why the Indian police would do what they did. And we're talking about space over his arrest. His first arrest was in 91. His last arrest is in 95. We're talking about a span of four years, and the Indian police should have a rational reason for what they do. He can only testify for what the truth is. Now, if his family is there, if we're going to say that he has no objective fear of returning, does that mean that he wasn't arrested? I don't think that we can make that conclusion. If the Respondent's Counsel and the immigration judge wanted to deny this case based on well-founded fear for future persecution, that could have been done. Either the respondent could have asked for a remand for a more complete decision, or the immigration judge could have done it in the first instance. That wasn't here. All we have is a credibility finding. Thank you, Counsel. Our questions took you way over time. Thank you very much. The case just argued will be submitted. The next case for oral argument this morning is Siney v. Gonzalez.
judges: Goodwin, O'scannlain, Kleinfeld